

FILED
CLERK, U.S. DISTRICT COURT

JUN 24 2009

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR IVLEV,<br><br>    Petitioner,<br><br>    v.<br><br>GEORGE J. GIURBINO, Warden,<br><br>    Respondent. | NO. CV 06-954-SVW (AGR)<br><br>ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION |

    Pursuant to 28 U.S.C. § 636, the Court has reviewed the entire file *de novo*, including the Petition; the Magistrate Judge's Report and Recommendation ("R&R"); the Objections to the R&R filed on December 18, 2008 ("Objections"); and the records and files. Based upon the Court's *de novo* review, the Court agrees with the recommendation of the Magistrate Judge.

    Petitioner objects to the recommended disposition of Grounds One and Two.[1] Petitioner argues that the R&R used the incorrect legal standard and, had the correct standard been used, Petitioner would be entitled to habeas relief.

---

[1] Ground One depends upon the same bases as Ground Two. (R&R at 18.) Accordingly, the Court will focus on Ground Two.

The Objections rely upon a 1996 Second Circuit case that was not cited to the Magistrate Judge. *Justice v. Hoke*, 90 F.3d 43, 47 (2d Cir. 1996). For the reasons set forth below, the Second Circuit decision does not qualify as "clearly established Federal law" within the meaning of 28 U.S.C. § 2254(d). Moreover, even assuming the Second Circuit decision applied to this case, Petitioner would not be entitled to habeas relief.

Ground Two challenged a state evidentiary ruling in which the trial court limited the testimony of codefendant Zinchenko. The R&R stated that "[o]n federal habeas review, Petitioner must show that a state's evidentiary ruling '"so infused the trial with unfairness as to deny due process of law."'" (R&R at 12 (citing *Estelle v. McGuire*, 502 U.S. 62, 75, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991)).) Petitioner argues that the correct standard is whether "the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist." (Objections at 7 (quoting *Justice*, 90 F.3d at 47 (brackets in original)).)

A federal court may not grant a petition for writ of habeas corpus by a person in state custody with respect to any claim that was adjudicated on the merits in state court unless it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d); *Woodford v. Visciotti*, 537 U.S. 19, 21, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (per curiam). "'[C]learly established Federal law' . . . is the governing legal principle or principles set forth by the Supreme Court at the time the state court rendered its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). "[T]he *only* definitive source of clearly established federal law under AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court's decision. * * * While circuit law may be persuasive authority for purposes of determining whether a state court

decision is an unreasonable application of Supreme Court law, . . . only the Supreme Court's holdings are binding on the state courts and those holdings need be reasonably applied." *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir.) (citing *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) ("The . . . statutory language makes clear . . . that § 2254(d)(1) restricts the source of clearly established law to this Court's jurisprudence.")), *cert. denied*, 540 U.S. 968 (2003). "Circuit precedent is relevant only to the extent that it clarifies what constitutes clearly established law." *Earp v. Ornoski*, 431 F.3d 1158, 1182 (9th Cir. 2005), *cert. denied*, 547 U.S. 1159 (2006).

      The Second Circuit's decision did not purport to clarify clearly established federal law under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which became effective on April 24, 1996. *Evans v. Chavis*, 546 U.S. 189, 200, 126 S. Ct. 846, 163 L. Ed. 2d 684 (2006). The *Justice* decision, which was decided on July 19, 1996, involved a federal habeas petition that had been filed before the enactment of AEDPA. Therefore, AEDPA did not apply to the *Justice* case. *See Woodford v. Garceau*, 538 U.S. 202, 205-06, 123 S. Ct. 1398, 155 L. Ed. 2d 363 (2003) (AEDPA does not apply to habeas petitions filed prior to effective date).

      In addition, the Second Circuit decision relied on a Supreme Court case, *United States v. Agurs*, 427 U.S. 97, 112, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976), whose legal standard was subsequently changed. *Agurs*, on direct review, analyzed whether the prosecutor's failure to provide the defense with certain background information about the victim deprived the defendant of a fair trial under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). In *Agurs*, the Court decided what "standard of materiality" compels a prosecutor to turn over exculpatory matter to the defense. *Agurs*, 427 U.S. at 107. The Court in *Agurs* held that "if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed." *Id.* at

112. The Supreme Court later abandoned this test in favor of a different one – "favorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles v. Whitley*, 514 U.S. 419, 433-34, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985)).

The R&R set forth the correct legal standard. (R&R at 11-12.) "The Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986) (citation omitted). The Court in *Crane* made clear that it "never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability – even if the defendant would prefer to see that evidence admitted." *Id.* More recently, the Supreme Court held that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006). "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Id.* at 324 (citations and internal quotation marks omitted). Only "arbitrary" rules violate constitutional norms. *Id.* at 324-25. The state court's interpretation of California law is binding upon this court. "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005) (per curiam). Petitioner's contention that the R&R used the incorrect legal standard is rejected.

4

  The Court also rejects Petitioner's argument that the R&R's reliance on *Estelle v. McGuire* is "misplaced" because it did "not address the trial court's refusal to permit the introduction of evidence by a defendant." (Objections at 6; R&R at 12.) *Estelle* is not restricted to specific state evidentiary rules: "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary *rules*." *Estelle*, 502 U.S. at 72 (emphasis added). "Nor do our habeas powers allow us to reverse McGuire's conviction based on a belief that the trial judge incorrectly interpreted the California Evidence Code." *Id.* "We do not sit to review state court action on questions of the propriety of the trial judge's action in the admission of evidence." *Lisenba v. California*, 314 U.S. 219, 228, 62 S. Ct. 280, 86 L. Ed. 166 (1941).

  Petitioner's contention that the *Estelle* standard does not apply to cases in which the trial court "restrict[ed] the defendant's ability to put on evidence" is rejected. (Objections at 6.) The Ninth Circuit used the standard in analyzing whether the California trial court's exclusion of testimony that was offered to "establish[] Marquis and Hillman's bias and motive to lie in order to exact revenge against Spivey" violated due process. *Spivey v. Rocha*, 194 F.3d 971, 977-78 (9th Cir. 1999), *cert. denied*, 531 U.S. 995 (2000); *see also Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) ("the trial court committed an error which rendered the trial so arbitrary and fundamentally unfair that it violated federal due process") (citation and internal quotation marks omitted).

  Even assuming that the *Justice* decision applied to this case, Petitioner still would not be entitled to relief. In *Justice*, the defendant was convicted of robbery and witness intimidation. *Justice*, 90 F.3d at 45. The only government witness at trial was the victim Locke. *Id.* Locke was a jewelry maker who bought gold and scrap jewelry and used it to make his own jewelry. *Id.* Justice had been selling gold to Locke for two years before the crimes. *Id.* According to Locke, Justice entered Locke's apartment and robbed him at gunpoint. *Id.* The defense wanted

5

to present the testimony of two witnesses that would show that Locke and Justice were partners in selling drugs; that the day before the robbery, Justice withheld drug money he supposedly owed Locke; and that Locke, in retaliation, fabricated the story about the robbery. *Id.* at 45-46. The trial court refused to allow the testimony because it was "collateral." *Id.*

The Second Circuit concluded that "Locke was the only witness for the prosecution, and his testimony was both uncorroborated and inconsistent with his prior statements." *Id.* at 48. The court held that "**competent** evidence establishing that Locke had a motive to fabricate the charges was of significant importance" and that "the excluded testimony could have raised a reasonable doubt that did not otherwise exist because it would not only have challenged the sole prosecuting witness' version of the facts, but would have tended to establish his bias." *Id.* at 48 (emphasis added).

The court in *Justice* made clear that "evidence of a witness' bias must be competent to be admissible." *Id.* The court found that the witnesses at issue had "direct knowledge" of the drug dealing arrangements. *Id.* at 49-50. Witness Lyons would have testified that "Locke paid him for selling drugs and that Justice collected the proceeds for Locke." *Id.* at 45. Lyons would also have testified that Justice gave Lyons money that Locke thought should have been his. *Id.* The Second Circuit found that Lyons's testimony was based on "direct knowledge of the alleged crack dealing arrangement between Locke, Justice, and himself." *Id.* at 48. The second defense witness, Newman, would have testified about a conversation he had with Locke "in which Locke told Newman that Justice owed Locke money." *Id.* at 46. The Second Circuit found that Newman's testimony "would have corroborated, through the mouth of the sole prosecution witness, Justice's own testimony." *Id.* at 49.

By contrast, in Petitioner's case the trial court found that the excluded testimony was not based on direct knowledge and was not competent.

Zinchenko wanted to testify that Mark Babaian had killed a Russian criminal in Germany, but as the trial court found, Zinchenko's testimony was based on hearsay and there was no proof that Babaian had killed anyone in Germany. (*See* R&R at 13.) The Second Circuit's decision in *Justice* does not support the admissibility of such incompetent evidence.

Petitioner had the opportunity to present a defense that the Babaians had a motive to falsely accuse him based on evidence in Zinchenko's personal knowledge. The trial court permitted Zinchenko to testify about a fraudulent refund scheme, a check fraud scheme, immigration fraud, and false documents. (*Id.* at 14.) Although the Objections argue that this evidence would show that the Babaians were "at most, sporadic breakers of a few minor laws" (Objections at 8), the California Court of Appeal noted that "the threat of deportation based on Zinchenko's personal knowledge gave the Babaians far more motive than a threat to tell the police hearsay about Babaian purportedly committing a murder in Germany." (R&R at 15.)

Accordingly, Petitioner's objections are without merit.

IT IS ORDERED that the Report and Recommendation is adopted, and that Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED: 6/24/09

STEPHEN V. WILSON
United States District Judge